IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLIED WORLD INSURANCE COMPANY, ALLIED WORLD SPECIALTY INSURANCE COMPANY, ALLIED WORLD NATIONAL ASSURANCE COMPANY and UNITED STATES FIRE INSURANCE COMPANY** | : : : : : : : : | **CIVIL ACTION** |
| v. | : : | |
| **JAMES KEATING, JONATHAN COHEN, JONATHAN P. COHEN, P.A. and SIAN KEATING** | : : : | **NO. 21-4010** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                              **March 11, 2022**

      In this RICO and fraud action, Allied World Insurance Company and its affiliates (collectively "Allied") alleges that its former employee, James Keating, and Jonathan Cohen, an attorney hired by him to handle claims on behalf of Allied, conspired to defraud it of more than $1.8 million. As part of the alleged scheme, Allied claims Cohen paid Keating kickbacks, which were funneled through a company called SR5, LLC ("SR5") that Keating and Cohen used as an enterprise to advance their fraudulent scheme and to hide the money. Allied casts its net to ensnare James's wife, Sian,[1] even though it does not allege that she participated in the fraudulent scheme. It asserts state law claims of conversion and unjust enrichment against her because she allegedly received personal benefits paid for from SR5's bank account.

      Moving to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Sian requests that we decline to exercise supplemental jurisdiction over the state law claims

---

[1] To distinguish between James and Sian Keating, we refer to them by their given names.

asserted against her because it is "fundamentally unfair" to require her to "participate in the litigation of the sprawling RICO scheme" where no federal claims have been asserted against her. She also moves to dismiss for failure to state a claim under Rule 12(b)(6), arguing that Allied has not stated claims for conversion and unjust enrichment.

We have subject matter jurisdiction based on diversity. However, because Allied has failed to state causes of action for conversion and unjust enrichment, we shall grant Sian Keating's motion under Rule 12(b)(6) and dismiss the First Amended Complaint against her.

### Allied's Allegations

According to the First Amended Complaint, Allied, a provider of surety bond coverage, hired James in February 2014 to handle surety bond claims.[2] Three months earlier, he had formed SR5, a company he would later use as a vehicle to "disguise illicit payments and channel them into [his] pocket."[3] Two months after starting with Allied, James opened a bank account in SR5's name. He deposited money that he earned working for one of Allied's competitors into the bank account.[4]

As part of his job duties, James retained attorneys to advise him on the merits of a claim and to represent the surety during the claim process and litigation. In January 2015, James retained defendant Jonathan Cohen and his law firm to represent Allied in connection with numerous surety and performance bond claims. Approximately four months later, in exchange for referring work to him, Cohen began paying kickbacks to

---

[2] First Am. Compl. (Doc. No. 22-2) ¶¶ 2, 23–24, 27.

[3] *Id.* ¶ 18.

[4] *Id.* ¶¶ 35–38. Over the next five and a half years, James deposited over $285,000.00 in earnings from Allied's competitor into his SR5 bank account. *Id.* ¶ 38.

2

James.  Between 2015 and 2021, Allied paid Cohen millions of dollars in fees.  Cohen made more than $300,000 in kickback payments to James through the SR5 account.  To recoup the kickbacks, Cohen overcharged Allied for work he performed.[5]

In 2016, James and Cohen created a joint venture, Kodiak Asset Recovery, LLC ("Kodiak"), to perform asset searches for claims James was handling for Allied.  Kodiak operated out of Cohen's law offices using his law firm's personnel.  Kodiak charged Allied double what a legitimate asset search firm would charge for the same services.  James approved Kodiak's fees for payment and split the profits with Cohen.  Between March 2017 and December 2020, Allied paid Kodiak over $340,000.  Kodiak deposited over $100,000 of that amount into the SR5 account for James.[6]

James created another company, American Construction & Industrial, LLC ("American Construction"), purportedly to perform consulting services for Allied.  He submitted fake contracts and fraudulent invoices to Allied.  Between January 2018 and December 2020, Allied paid more than one million dollars to American Construction, which was deposited into the SR5 bank account.[7]  In total, Allied alleges that James and Cohen embezzled more than $1.8 million from Allied.[8]

Allied does not allege that Sian participated in the fraudulent scheme.  Yet, it contends that she is liable because she benefitted from it.  Allied claims funds flowed from the SR5 account to her and her family, including $4,000 in checks payable to her; an

---

[5] *Id.* ¶¶ 2, 25, 42, 44–48, 51.

[6] *Id.* ¶¶ 3, 54, 57, 64–69, 75.

[7] *Id.* ¶¶ 4, 76–78.

[8] *Id.* ¶ 84.

$1,800 check payable toward her Lord & Taylor credit card balance; $19,000 in checks payable to a kitchen remodeler; and checks payable to a housekeeper, Hooters, and their children's college funds.[9]

## Discussion

### Motion to Dismiss Pursuant to Rule 12(b)(1)

Sian requests that we decline to exercise supplemental jurisdiction over the state law claims asserted against her for lack of subject matter jurisdiction. Contending that it is "fundamentally unfair" to require her to "participate in the litigation of the sprawling RICO scheme," she argues that these are "exceptional circumstances" compelling us to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(4).[10]

Section 1367 does not apply. Although it grants the district court discretion to remand claims over which it has supplemental jurisdiction, it does not authorize remanding claims over which it has original jurisdiction. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995); *see also Matusow v. Trans-Cnty. Title Agency, LLC*, 545 F.3d 241, 248 (3d Cir. 2008) ("[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992))). Thus, a district court may not decline to hear a claim over which it has original jurisdiction. *Borough of West Mifflin*, 45 F.3d at 787.

Federal district courts have original jurisdiction of all civil actions "between . . . citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C.

---

[9] *Id.* ¶¶ 85–86, 88, 90.

[10] Mem. of Law of Def. Sian Keating's in Supp. of Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Doc. No. 25-2) at 2–4.

§ 1332(a)(1). Here, we have diversity jurisdiction. The parties are diverse and the amount in controversy exceeds $75,000.00. Therefore, we must deny the motion to dismiss under Rule 12(b)(1) raising lack of jurisdiction.

*Motion to Dismiss Pursuant to Rule 12(b)(6)*

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 556 U.S. at 556).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly,* 550 U.S. at 563 n.8). In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we must first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then we determine whether the alleged facts make out a plausible claim for relief. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal,* 556 U.S. at 679). All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York,* 577 F.3d

521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## Conversion Claim

Under Pennsylvania law, "[c]onversion is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." *Baram v. Farugia*, 606 F.2d 42, 43 (3d Cir. 1979) (citing *Norriton East Realty Corp. v. Cent.-Penn Nat'l Bank*, 254 A.2d 637, 638–39 (Pa. 1969)); *Pioneer Com. Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 (Pa. 2004) (quoting *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)). The plaintiff must have had a right to possession of the chattel at the time it was converted. *Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch*, 231 A.3d 923, 925 (Pa. Super. 2020) (citation omitted).

Money may be considered a chattel for purposes of conversion. *Id.* (citing *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987)). But, the funds must be "identifiable." *Pioneer Com. Funding*, 855 A.2d at 827 n.21 (Pa. 2004) (first citing *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. 2000); and then citing *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 879 (Pa. Super. 1997)).

Allied has not and cannot allege that the money Sian received from the SR5 account belonged to Allied. James and Cohen converted Allied's funds when they deposited Allied's checks into the SR5 account. As alleged in the First Amended Complaint, money that had been converted from Allied was comingled with money from other sources. Allied has not alleged facts which, if proven, would show that the money Sian received is traceable to money from Allied. Instead, the money could have come

6

from Allied, another surety bond company, or others.  In other words, once the Allied money was deposited and comingled, it lost its identity.  Thus, because the funds Sian allegedly received from Allied are not identifiable, they cannot be considered a chattel subject to conversion.

Allied argues that Sian is nonetheless liable for conversion of its property because the funds she received were the "fruits of a fraudulent scheme to embezzle" its funds.[11]  Pointing to a "well settled legal proposition that ordinarily when one buys and consumes chattels which belong to another he becomes a converter and must pay for his conversion regardless of his good faith,"[12] Allied contends that she is not insulated from liability for conversion just because she did not receive funds directly from Allied and may not have known they were stolen.[13]  It argues that James could not lawfully convey that money to Sian, even if she had been a *bona fide* purchaser for value.[14]

The *bona fide* purchaser rule does not apply.  Allied has cited no case—and we can find none—that has held a person liable for conversion for receiving money stolen by another and comingled with other money.  Adopting Allied's argument would lead to a bizarre result.  The line of those who received money traced back to the conversion would be endless.  For example, the kitchen remodeler, the housekeeper, and Lord & Taylor would be considered converters.

---

[11] First Am. Compl. ¶ 213.

[12] Allied World's Opp'n to Sian Keating's Mot. to Dismiss (Doc. No. 35) ("Allied's Opp'n") at 7 (quoting *First Camden Nat'l Bank & Tr. Co. v. J. R. Watkins Co.*, 122 F.2d 826, 826–27 (3d Cir. 1941)).

[13] *Id.* at 7–8.

[14] *Id.* at 8.

"Not every . . . deprivation of property amounts to a conversion; there must be an actual appropriation of it by the offending party for [her] own use." *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. 1994) (quoting 37 P.L.E. Trespass § 81). Because the facts alleged do not show that Sian appropriated identifiable funds belonging to it, Allied has not stated a cause of action for conversion.

<u>Unjust Enrichment Claim</u>

The elements of an unjust enrichment claim are: (1) the plaintiff conferred a benefit on the defendant; (2) appreciation of the benefit by the defendant; and (3) retention of the benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment to the plaintiff. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. 2001)). The "most critical element" of the doctrine is "whether the enrichment of the defendant is unjust." *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 917 (Pa. Super. 2017). "[A] claim for unjust enrichment requires more than a showing that the defendant may have benefited" as a result of the plaintiff's actions. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180–81 (3d Cir. 2008) (citing *Walter v. Magee-Womens Hosp.*, 876 A.2d 400, 407 (Pa. Super. 2005)). The plaintiff "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that . . . would be unconscionable for her to retain." *Gutteridge*, 165 A.3d at 917 (quoting *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985)).

Allied cannot show that it conferred a benefit on Sian. James benefitted from Allied. That he made direct payments from the SR5 bank account to Sian and others, such as their kitchen remodeler, housekeeper, and restaurants they patronized, does not

8

show that she benefitted from Allied.  As we already noted, the source of the payments from the SR5 account cannot be identified as coming from Allied and not some other source whose payments were deposited into the account.

Even if it could show Sian received a benefit from it, Allied has not alleged facts which, if proven, would show she wrongfully secured or passively received a benefit that would be unconscionable for her to retain.  At most, it alleges that she was a "passive recipient."[15]  It argues that even if she had been unaware of her husband's fraud, it would be unjust for her to retain her husband's stolen money, especially after having "enjoyed the benefits of these embezzled funds" by accepting checks from SR5's bank account, paying off her credit card, and remodeling the kitchen.[16]  In short, Allied is attempting to hold Sian derivatively liable.

Because Allied has asserted an unjust enrichment claim against James and Cohen, it can recover the embezzled funds directly from them.  Any recovery against Sian would constitute a double recovery for Allied.  Her husband would be liable for the money he took from Allied.  In short, Allied has not pleaded facts showing it would be unconscionable to permit Sian to retain any benefit she may have received from the SR5 account.

---

[15] Allied concedes as much in its response to Sian's motion.  See Allied's Opp'n at 8 ("[A]t the very least, she 'passively received' stolen funds that 'would be unconscionable for [her] to retain.'").

[16] Id. at 8–9.

**Conclusion**

Allied has not stated causes of action for conversion and unjust enrichment against Sian. Therefore, we shall dismiss the First Amended Complaint against Sian with prejudice.